FIDELITY & DEPOSIT CO. OF MARYLAND v. HELVERING, Commissioner of Internal Revenue, et al.

No. 7434.

United States Court of Appeals for the District of Columbia.

Decided April 15, 1940.

---

[3] 44 Stat. 901, 18 U.S.C.A. § 746.

Geo. E. H. Goodner, of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., John W. Fihelly, Asst. U. S. Atty., and Sewall Key, Sp. Asst. to Atty. Gen., and E. E. Angevine and John A. Gage of the Department of Justice, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This is an appeal from an order of the District Court awarding the appellees $6,500 on an injunction bond for that amount executed by one Mertz with the Fidelity and Deposit Company of Maryland as surety.

Since one of the questions presented concerns the application to be given a Statute of Limitations, in the statement of relevant facts the time and sequence of events must be noted with some particularity.

On March 15, 1921, Edward P. Mertz (the taxpayer) filed a return with the Collector of Internal Revenue for the year 1920 indicating no tax liability for that year. In December, 1921, the Commissioner of Internal Revenue assessed a deficiency against the taxpayer of $16,600.89. The taxpayer filed an abatement claim with the Commissioner and, after considering it, he notified the taxpayer by letter dated May 22, 1925, that the tax would be reduced $1,-009.31, and advised him that he had 60 days in which to appeal the assessment to the United States Board of Tax Appeals, an agency created by the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 1 et seq. Within the 60 day period the taxpayer took the appeal. The Board promulgated its final order of redetermination on March

9, 1927 reducing the tax liability to $6,-533.07. In August of the same year a deputy collector notified the taxpayer that unless the tax was paid he would utilize a distraint warrant to collect the same. The amount demanded totaled $5,582.52 and represented the tax liability as determined by the Board, plus interest, less overassessments for prior years as determined by the Commissioner (hereinafter referred to as the tax).

On September 19, 1927, the taxpayer filed a bill of complaint in the District Court naming the Commissioner of Internal Revenue and certain other officials as defendants (appellees herein). Reference was made to sections of the Revenue Acts of 1921 and 1924[1] which, it was asserted, required collection of the tax within five years after the date of the filing of the return. Relief prayed for was an injunction against collection of the tax by distraint or any other method. A temporary injunction was granted February 13, 1928 at which time the following bond was executed:

"Edward P. Mertz, the plaintiff, and Fidelity and Deposit Company of Maryland, surety * * *, hereby undertake for ourselves and each of us, * * * to make good to the defendants all damages not to exceed the sum of Six Thousand Five Hundred dollars ($6500.00) by them suffered or sustained by reason of wrongfully and inequitably suing out the injunction * *, and stipulate that the damages may be ascertained in such manner as the Court shall direct, and that, on dissolving the injunction, the Court may give judgment thereon against the principal and surety for said damages in the decree dissolving the injunction, or in a further decree after ascertainment of the amount of said damages."

Later the injunction was made permanent —the District Court being of the view that the tax was barred by the applicable Statute of Limitations. An appeal was taken to this court and we held that, whether the tax was barred or not, the District Court was without jurisdiction to entertain the case by virtue of § 3224 of the Revised Statutes.[2] The case was reversed and remanded with instructions to dismiss the bill. Pursuant thereto the District Court dissolved the injunction. At the same time it awarded the appellees the amount of the bond and from this order the Fidelity and Deposit Company, surety on the bond, appeals.

As the appellant points out, the bond was drawn not to insure payment of the tax if due, but to reimburse the appellees for loss occasioned by the injunction if wrongful. Hence, the appellees were entitled to the amount of the bond only if damaged to that extent by the injunction. The appellant contends they suffered no damage and, in support of its contention, presents three alternative propositions.

First, it is argued that since that part of the District Court's decision holding the tax barred was neither appealed from nor disturbed on appeal, it is the "law of the case" binding in any further litigation in respect to the tax. It is clear, of course, that if the tax was barred by the statute of limitations at the time the bill filed the appellees could not have been damaged by the injunction. The District Court decision that the tax was barred cannot, however, be the "law of the case" for the reason that, as we held in our previous opinion, the District Court was without jurisdiction in the premises. Its decision therefore had no binding effect whatsoever.[3]

The second proposition, advanced by appellant, is that the tax was in fact barred at the time the bill of complaint was filed. Reference is made to certain sections of the 1921 and 1924 Revenue Acts[4] which, it is asserted, prohibited collection of the tax later than five years after the taxpayer filed his return. Absent any interruption, that period would have expired March 15, 1926, considerably before the taxpayer filed his bill or secured the injunction against collection of the tax. Although it appears that the applicable period of limitation was ex-

---

[1] Revenue Act of 1921, § 250(d), 42 Stat. 227, 265; Revenue Act of 1924, §§ 277(a) (2), 278(e), 43 Stat. 253, 299, 300, 26 U.S.C.A. Int.Rev.Acts, pages 59, 60.

[2] Mellon v. Mertz, 65 App.D.C. 266, 82 F.2d 872. Rev.Stat. § 3224, 26 U.S.C.A. Int.Rev.Code § 3653, provides as follows: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

[3] Vallely v. Northern Fire Insurance Co., 254 U.S. 348, 353, 41 S.Ct. 116, 65 L.Ed. 297; In re Braver, D.C., 51 F.2d 123, 124; Elliot v. De Soto Crude Oil Purchasing Corp., D.C., 20 F.Supp. 743. See, also, Hartford Life Insurance Co. v. Blincoe, 255 U.S. 129, 136, 41 S.Ct. 276, 65 L.Ed. 549.

[4] Supra note 1.

tended by the Revenue Act of 1926,[5] we need not rest our decision on that ground for we are of the opinion that the taxpayer's appeal from the assessment of the Commissioner to the Board of Tax Appeals suspended the running of the limitation period so that even a five year period of limitation had not yet expired when the bill was filed or the injunction granted.

It will be recalled that the Commissioner assessed the deficiency against the taxpayer in December, 1921. Thereafter the taxpayer filed an abatement claim which the Commissioner disposed of finally May 22, 1925. At that time, the taxpayer was notified that he might, within a 60 day period, appeal to the Board of Tax Appeals. He availed himself of this privilege. The Board was created by the Revenue Act of 1924 and thereunder it was provided that the period of limitation within which the tax might be

collected was suspended from the date notice was given the taxpayer of the right to appeal until a final decision of the Board.[6] Although the jurisdiction of the Board under the 1924 Act to entertain an appeal from an assessment made prior to its enactment was not free from doubt,[7] a taxpayer who took such an appeal or his privy in interest should not be heard to gainsay that the limitation period was thereby extended.[8] We need not base our decision on this ground, however, for, in the Revenue Act of 1926, Congress confirmed the Board's jurisdiction in such cases. This latter Act became effective February 26, 1926, and § 283 (f) thereof, together with certain complementary sections, provided that, in such a case as we here consider, the limitation period should be suspended by an appeal to the Board from the date notice was given the taxpayer of the right to appeal until

---

[5] Section 278(d) and (e) of the Revenue Act of 1926, 44 Stat. 59, 26 U.S.C.A. Int.Rev.Acts, page 209, provided as follows:

"(d) Where the assessment of any income, * * * tax imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, * * *.

"(e) This section shall not * * * authorize the assessment of a tax or the collection thereof by distraint or by proceeding in court (1) if at the time of the enactment of this Act such assessment, distraint or proceeding was barred by the statutory period of limitation properly applicable thereto, * * *."

Since a five year limitation period could not have run on a return filed March 15, 1921 until after the enactment of the 1926 Act on February 26, 1926, it seems clear that § 278 (d) provides a six year limitation period running from the date of the assessment—December 1921 in the instant case.

This same section as it appeared in the Revenue Act of 1924, 43 Stat. 300, did not specify that the extended period was applicable to assessments made prior to its enactment. In Russell v. United States, 278 U.S. 181, 49 S.Ct. 121, 73 L.Ed. 255, the Supreme Court held it was not to be so applied. Congress has expressly provided, however, in the 1926 Act that the extended period is applicable

to assessments "whether before or after the enactment of this Act." See Pacific Coast Steel Co. v. McLaughlin, 9 Cir., 61 F.2d 73, 78, affirmed on other grounds 288 U.S. 426, 53 S.Ct. 422, 77 L.Ed. 873.

[6] Under § 274 of the 1924 Act, 43 Stat. 297, 26 U.S.C.A. Int.Rev.Acts, page 56, a taxpayer receiving notice from the Commissioner of a deficiency in respect to a tax levied thereunder was given a 60-day period in which to appeal to the Board of Tax Appeals. If an appeal was taken, assessment was delayed until the Board rendered its decision. Under § 277(b) (2) the limitation period within which an assessment might be made was suspended by an appeal to the Board from the date of notice of the right to appeal until the Board rendered a final decision in the matter. Section 278(d) provided that collection of the tax might be made within six years after assessment. Thus, in an appeal under these provisions the running of the limitation period was suspended from the date of notice of the right to appeal until the Board rendered its final decision. Cf. Price & Lucas Cider Co. v. Lucas, 6 Cir., 45 F.2d 1004; Globe Gazette Printing Co. v. United States, Ct.Cl., 13 F.Supp. 422, 424.

[7] Russell v. United States, 278 U.S. 181, 186, 49 S.Ct. 121, 73 L.Ed. 255; Brown & Sons Lumber Co. v. Burnet, 282 U.S. 283, 289, n. 7, 51 S.Ct. 140, 75 L.Ed. 343. :

[8] Cf. R. H. Stearns & Co. v. United States, 291 U.S. 54, 61, 54 S.Ct. 325, 78 L.Ed. 647; Collins v. Woodworth, 6 Cir., 109 F.2d 628; Continental Products Co. v. Commissioner, 1 Cir., 66 F.2d 434, 435; Lattimore v. United States, Ct.Cl., 12 F.Supp. 895, 911.

six months and 60 days after the rendition of the Board's decision.[9] Against these positive provisions of the 1926 Revenue Act inferences sought to be drawn from other sections cannot prevail. Moreover, the principal objections made by the appellant to

[9] Section 283(f) of the Revenue Act of 1926, 44 Stat. 64, 26 U.S.C.A. Int.Rev. Acts, page 216, provides as follows:

"If any deficiency in any income * * * tax imposed by the * * * Revenue Act of 1918, or the Revenue Act of 1921 * * * was assessed before June 3, 1924 [the tax in the instant case for the year 1920 was assessed in December, 1921], but was not paid in full before that date [the tax has not yet been paid in full or in part], and if the Commissioner after June 2, 1924, but before the enactment of this Act finally determined the amount of the deficiency [the Commissioner finally determined the amount of the deficiency in the instant case May 22, 1925], and if the person liable for such tax appealed before the enactment of this Act to the Board and the appeal is pending before the Board at the time of the enactment of this Act [the taxpayer appealed to the Board within 60 days after May 22, 1925, and the case was still pending before the Board when the 1926 Act was enacted, February 26, 1926], the Board shall have jurisdiction of the appeal. In all such cases the powers, duties, rights, and privileges of the Commissioner and of the person who has brought the appeal, and the jurisdiction of the Board and of the courts, shall be determined, and the computation of the tax shall be made, in the same manner as provided in subdivision (e) of this section, except as provided in subdivision (j) of this section * * *".

The relevant provisions of subdivision (e) are as follows:

"In the case of any such final determination the amount of the tax * * * shall * * * be computed as if this Act had not been enacted, but the amount so computed shall be collected and paid in the same manner and subject to the same provisions and limitations * * * as in the case of a deficiency in the tax imposed by this title * * *".

Thus it is clear that the appeal to the Board in the instant case is to be treated in all respects as one arising under the 1926 Act. Section 277(b) thereof suspends the running of the limitation period for the period during which the Commissioner is prohibited from collecting the tax and for 60 days thereafter. Under § 274(a) collection is prohibited from the date notice is given of the right to appeal until the decision of the Board becomes final. Where, as here, no petition for review is filed, the Board's decision becomes final 6 months after its rendition under §§ 1001(a), 1005(a) (1). Thus the running of the limitation period is suspended from the date of the notice to the taxpayer of the right to appeal until six months and 60 days after the Board renders its decision.

It was argued in Brown & Sons Lumber Co. v. Burnet, 282 U.S. 283, 292, 294, 51 S.Ct. 140, 75 L.Ed. 343, that § 277(b) suspending the running of the limitation period was not applicable retroactively to a period preceding enactment of the 1926 Act when the Commissioner was not legally prohibited from distraining to collect the tax. The Court, Brandeis, J., writing, pointed out that § 283(f) was designed to accomplish just that result.

The above interpretation of § 283(f) assumes that the Board heard the case subsequent to the enactment of the 1926 Act on February 26, 1926. If the case was heard by the Board prior to that date, subdivision (j) of § 283 is applicable and it provides in part as follows:

"In cases * * * where any hearing before the Board has been held before the enactment of this Act and the decision is rendered after the enactment of this Act, such decision shall, for the purposes of this title, be considered to have become final upon the date when it is rendered and neither party shall have any right to petition for a review of the decision. The Commissioner may, within one year from the time the decision is rendered, begin a proceeding in court for the collection of any part of the amount disallowed by the Board, unless the statutory period * * * applicable thereto has expired before the appeal was taken to the Board. * * *"

A five year limitation period running from the date of the return March 15, 1921, could not have expired when the taxpayer filed his petition with the Board of Tax Appeals May 22-July 22, 1925. Hence, if the Board heard the case prior to February 26, 1926, the Commissioner was given a year after the Board's decision of March 9, 1927, to collect the tax. That period had some time to run when the taxpayer filed his bill and secured his injunction.

The record does not indicate whether the Board heard the appeal, before or after the enactment of the 1926 Act. Since the outcome in this case, as seen from the above, would be the same in either event, and, since the case is presented here on the theory that it was heard after enactment of the 1926 Act, we treat that as the fact in this opinion.

application of these sections of the 1926 Act were conclusively disposed of by the Supreme Court in Brown & Sons Lumber Co., v. Burnet, 282 U.S. 283, 51 S.Ct. 140, 75 L.Ed. 343, wherein it was held that the provisions of the Act for suspension of the running of the limitation period were by their terms retroactively applicable to appeals pending at the time of its enactment.[10]

In view of the foregoing, we think it clear that under the Revenue Act of 1926 the running of the limitation period within which the tax might be collected was suspended from May 22, 1925, the date the Commissioner notified the taxpayer of his right to appeal to the Board, until November 8, 1927, six months and 60 days after the Board's decision of March 9, 1927. Thus the limitation period was suspended for a period of two years, five months and 17 days. A five year limitation period starting to run from the date the return was filed, March 15, 1921, and extended by the period of suspension, two years, five months and 17 days, would not have expired until August 31, 1928, considerably after the taxpayer filed his bill of complaint (September 19, 1927) and secured his injunction (February 13, 1928) against the collection of the tax. Thus the tax was not barred when either of these events occurred.

We come then to the third and last point advanced by the appellant. It is charged that the order of the District Court awarding the full amount of the bond to the appellees is not supported by any proof that the injunction caused damage.

The injunction bond provided that the parties thereto would "make good to the defendants (appellees) all damages not to exceed the sum of Six Thousand Five Hundred dollars ($6500.00) by them suffered or sustained by reason of wrongfully and inequitably suing out the injunction * * *".

The order of the District Court awarding the appellees the full amount of the bond must be regarded as a finding that the injunction damaged them to that extent, i. e., that the government unobstructed could have largely collected the tax whereas it was uncollectible on dissolution of the restraint.[11] We are of the opinion that finding is supported by the record.

For the sake of clarity, we shall consider first the evidence respecting the collectibility of the tax on dissolution of the injunction. At that time the tax, with accumulated interest, far exceeded the amount of the bond. To establish that it could not then be collected from the taxpayer, the appellees introduced an affidavit, without objection on the part of the appellant, wherein it was stated that the taxpayer had, during pendency of the injunction, been adjudicated a bankrupt, was insolvent and without funds to pay his obligations to the United States. No evidence was introduced by the appellant to the contrary. Although the proof on this issue was not all that might be desired, a determination that the tax was not collectible after dissolution of the injunction was not clearly erroneous or without foundation.

Premising that the tax and accumulated interest was uncollectible on dissolution of the injunction, the damage occasioned by the restraint was so much of the tax plus accumulated interest as the government unobstructed could have collected. When the taxpayer sought and obtained a court decree paralyzing the governmental collection machinery in respect to his obligation, a considerable period of time remained within which the tax might have been collected. This collection opportunity thus lost to the government was obviously of some value, hence the fact that the restraint caused some damage is certain. By preventing

---

[10] An attempt is made to distinguish Brown & Sons Lumber Co., v. Burnet, supra, on the ground that the tax there was kept alive after expiration of the limitation period until the appeal was taken to the Board by waivers executed by the taxpayer. Since the last waiver by its terms would have expired while the appeal was pending before the Board and the Court held that the period of limitation was suspended by the appeal, we are of the opinion that the appellant has pointed to a difference rather than a distinction.

[11] From the terms of the bond it is clear that it was drawn to protect from damage occasioned by the injunction, not to insure payment of the tax if due. United States v. Charleston Lead Works, D. C., 49 F.2d 281; Woolfolk v. Jones, D.C. E.D.Va., 216 F. 807, reversed on other grounds, sub nom American Surety Co., of New York v. Jones, 4 Cir., 224 F. 673; American Exchange Nat. Bank v. Goubert, 210 N.Y. 421, 104 N.E. 928. The measure of the damages would obviously be the difference between what the government unobstructed could have collected and what could have been collected from the taxpayer after dissolution of the injunction.

the government from realizing on its opportunity the taxpayer has made it difficult to exactly ascertain the damage, difficulty not made easier by the fact that the injunction issued more than a decade ago. In such a case the one responsible for the damage cannot escape liability on the ground that exact ascertainment of the loss has been rendered difficult by the very act complained of, and proof as to the extent of the damage need not be great.[12] That the taxpayer deemed it worthwhile to restrain collection of the tax and, in order to do so, gave a surety bond in the amount of $6,500 are facts of record persuasive that the government unobstructed could have collected the tax. Other proof as to what might have been is pre-eminently in the possession of those responsible for its hypothetical status. Neither the taxpayer nor the appellant offered any evidence to disprove that the government unobstructed could have collected the tax. On this state of the record we cannot say that the District Court erred in taking the view that but for the injunction the tax would have been collected.[13] The record therefore supports a conclusion that the damage sustained by reason of the injunction was the tax plus accumulated interest. Since that exceeds the amount of the bond awarded the appellees, the order of the District Court must be affirmed.

Affirmed.

---

[12] Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544; Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F.2d 589, 592; Note 78 A.L.R. 858; McCormick, Damages (1935) § 27.

[13] Cf. Tomkins Cove Stone Co., v. Bleakley, 3 Cir., 40 F.2d 249; Spencer v. Pettit, Tex.Civ.App., 17 S.W.2d 1102, 1107; Beck v. Wilkins-Ricks Co., 179 N.C. 231, 102 S.E. 313, 9 A.L.R. 554; City of Mobile v. McClure, 221 Ala. 51, 127 So. 832; 20 Am.Jur.Evidence §§ 140, 183.