Jerome ZADOFF and Lucie
Zadoff, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 82 Civ. 7160 (JES).

United States District Court,
S.D. New York.

July 15, 1986.

Norman R. Berkowitz, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, for defendant; Jordan Stanzler, Asst. U.S. Atty., of counsel.

SPRIZZO, District Judge:

This is an action for a federal tax refund. *See* Complaint at ¶ IV. Defendant has moved for summary judgment and the parties have stipulated to a set of facts for the purposes of this motion. For the reasons set forth *infra*, the Court grants defendants' motion for summary judgment.

## BACKGROUND

The facts in this action, as set forth in the parties' stipulation of facts ("Stipulation") and the exhibits attached thereto, are as follows: From 1972–1974, the plaintiff Jerome Zadoff ("Zadoff") was employed by the Milton Bradley Co. ("Bradley") as a purchasing agent. *See* Stipulation at ¶ 1. On March 27, 1974, Bradley sued Zadoff for fraud in the Supreme Court of the State of New York. *See id.* at ¶ 8. Subsequently, on September 27, 1977, the Supreme Court of the State of New York entered an Order and Judgment in Bradley's favor. *See Milton Bradley Company v. Jerome S. Zadoff,* No. 4030/1974 (N.Y.Sup.Ct. Sept. 23, 1977) ("*Milton Bradley*"). The court's Order and Judgment provided that Zadoff was to pay to Bradley damages in "the sum of $123,826.83, such sum representing $75,826.83 in 'kickbacks' illegally received by [Zadoff] from [Bradley's] suppliers, [and] $48,000 in salary paid to defendant Zadoff by plaintiff while said defendant was acting in a manner disloyal to his employer." *See id.* at 3.[1]

Pursuant to this state court judgment, plaintiffs paid to Bradley $107,228.87 in 1977 and $20,050.00 in 1979. *See* Stipulation at ¶ 10. Although Zadoff paid these damages to Bradley, the plaintiffs also jointly paid income taxes on both the salary and the suppliers' payments. *See id.* at ¶ ¶ 4–7.[2] On July 18, 1979, plaintiffs filed a

---

1. The state court in *Milton Bradley, supra,* initially referred the action to a special referee for a report and recommendation. The parties in the instant action have attached a copy of the special referee's report and recommendation ("R & R") as an exhibit to the stipulation of facts. After holding a hearing, the special referee concluded that Zadoff received illegal kickbacks and that Zadoff was disloyal to his employer. *See* R & R at 3. The New York State Supreme Court's Order and Judgment in *Milton Bradley, supra,* in addition to ordering that the defendant's pay damages to Bradley, ordered that the special referee's report "be and the same hereby is in all respects confirmed." *See Milton Bradley, supra,* at 3.

2. Initially, plaintiffs did not report the suppliers' payments on their 1972–74 federal income tax returns. *See* Stipulation at ¶ 5. In 1977, the Internal Revenue Service sent to plaintiffs a notice of deficiency for those years. *See id.* at ¶ 2. In the subsequent Tax Court proceeding Zadoff admitted that he erroneously reported the suppliers' payments as income to Eagle Enterprises Inc., a company which Zadoff owned or controlled. *See id.* at ¶ 5. A consent decision therefore was issued in the Tax Court on March 2, 1979, increasing plaintiffs' gross income for the taxable years 1972–74 and assessing income tax deficiencies against plaintiffs for those years. *See id.* at ¶ ¶ 4, 6.

Form 1040X amended tax return for 1977 seeking a tax refund pursuant to 26 U.S.C. § 1341 (1982) due to the losses incurred by the 1977 damage payments to Bradley. ("The 1979 refund claim"). *See id.* at ¶ 11; *see also id.* at Ex. C (Plaintiffs' Form 1040X amended tax return). Similarly, on July 22, 1980, plaintiffs filed a Form 1045, Application For Tentative Refund seeking a refund pursuant to § 1341 due to the losses incurred by the 1979 payments to Bradley. ("The 1980 refund claim.") *See id.* at ¶ 12. Section 1341, if applicable, would allow plaintiffs a deduction for the damage payments made to Bradley in an amount which would completely offset the income tax already paid on the salary and suppliers' payments. *See* 26 U.S.C. § 1341(a)(5) (1982).

On March 31, 1982, the Internal Revenue Service ("I.R.S.") determined that the benefits of § 1341 were not available to plaintiffs. With respect to plaintiffs' 1979 refund claim, however, the I.R.S. did advise plaintiffs that they were entitled to an ordinary deduction for the 1977 taxable year because the damage payments were a loss incurred in a transaction entered into for profit. *See* Stipulation at ¶ 14; *see also* 26 U.S.C. § 165(c)(2) (1982). On the other hand, the I.R.S. disallowed plaintiffs' 1980 refund claim entirely because of plaintiffs' failure to file a claim for a refund separate and apart from the Form 1045, Application for a Tentative Refund. *See* Stipulation at ¶¶ 13, 14. Plaintiffs challenge both the I.R.S.' denial of § 1341 treatment for the 1979 and 1980 refund claims and the I.R.S.' denial of their 1980 refund claim in its entirety.[3]

## ANALYSIS

█ Congress enacted § 1341 to alleviate the possible inequities which may result when a taxpayer reports income under a claim of right in the year he receives money, but then incurs a loss because he is adjudged liable to repay that money in a later year. *See United States v. Skelly Oil Co.*, 394 U.S. 678, 681–682, 89 S.Ct. 1379, 1381–1382, 22 L.Ed.2d 642 (1968) (citing H.R.Rep. No. 1337, 83d Cong., 2d Sess. 86–87 *reprinted in* 1954 U.S.Code Cong. & Ad. News 4017, 4436; S.Rep. No. 1622, 83d Cong., 2d Sess. 118–119 *reprinted in* 1954 U.S.Code Cong. & Ad.News 4621, 5095); *McKinney v. United States*, 574 F.2d 1240, 1241 (5th Cir.1978). Since under normal tax accounting, the taxpayer can only deduct the loss in the year of repayment, the tax benefit from the deduction may be less than the income tax which was paid in the year of receipt. This will occur, for example, if the taxpayer is in a lower tax bracket in the year of repayment. *See Skelly Oil, supra*, 394 U.S. at 681, 89 S.Ct. at 1381. Section 1341 seeks to ameliorate this hardship by allowing the taxpayer a deduction in the year of repayment in an amount equal to the income tax already paid. *See* 26 U.S.C. § 1341(a)(5)(B) (1982); *see also McKinney, supra*, 574 F.2d at 1242.

Section 1341 provides that its benefits are only available when the repaid "item was included in gross income for a prior taxable year (or years) *because it appeared that the taxpayer had an unrestricted right to such item.*" *See* 26 U.S.C. § 1341(a)(1) (1982) (emphasis added). With this language, Congress intended to limit the applicability of § 1341 to cases where the taxpayer received the income

---

3. In addition to plaintiffs' claim for the 1979 and 1980 refunds pursuant to § 1341, plaintiffs' amended complaint seeks an "abatement of internal revenue taxes erroneously assessed." *See* Amended Complaint at ¶ III. According to that complaint, the I.R.S. initially did refund part of the requested amount on plaintiffs' 1980 refund claim. *See id.* at ¶ IV(b). The complaint further alleges that the I.R.S. later reassessed its position on the 1980 refund claim and therefore demanded repayment of the monies previously refunded. *See id.* at § VI.

The parties fail to deal with this claim in either their memoranda of law or in the stipulation of facts. The complaint, however, makes it clear that the claim can only succeed if plaintiffs' refund claims pursuant to § 1341 are upheld. *See id.* at § VII. Since the Court, for the reasons set forth *infra,* holds that the I.R.S. correctly denied plaintiffs' § 1341 refund claims, plaintiffs' claim for the abatement of federal income taxes assessed must fail as well.

under a claim of right. *See generally McKinney, supra,* 574 F.2d at 1241, 1243; *see also Skelly Oil, supra,* 394 U.S. at 680, 89 S.Ct. at 1381; *Van Cleave v. United States,* 718 F.2d 193, 195 (6th Cir.1983); *Hankins v. United States,* 403 F.Supp. 257, 259 (N.D.Miss.1975), *aff'd,* 531 F.2d 573 (5th Cir.1976); Treas.Reg. §§ 1.1341–1(a)(1), (2) [4]; Complaint at ¶ V(b). In order to receive income under a claim of right, the taxpayer must have a bona fide and legitimate claim to the income at the time of receipt. *See Perez v. United States,* 553 F.Supp. 558, 559 (M.D.Fla.1982); *see also McKinney, supra,* 574 F.2d at 1243 (embezzled funds not received under a claim of right; section 1341 treatment denied to taxpayer upon repayment of funds). Moreover, if the taxpayer has a bona fide claim to the income, and receives the income "without restriction as to its disposition," the income is still received under a claim of right "even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *North American Oil Co. v. Burnett,* 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed.2d 1197 (1932); *see, e.g., United States v. Lewis,* 340 U.S. 590, 591, 71 S.Ct. 522, 95 L.Ed.2d 560 (1951) (employee received salary bonus under a bona fide claim of right, even though employee was subsequently required to return the bonus when it was discovered that the bonus was based on incorrect salary computations).

■ Plaintiffs argue that they did receive the suppliers' payments and the salary under a bona fide claim of right. *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("PMO") at 6, 7. The state court in *Milton Bradley, supra,* however, held that

Zadoff received the suppliers' payments as "illegal kickbacks." *See id.* at 3. In addition, the state court held that Zadoff received the salary while he was "acting in a manner disloyal to his employer." *See id.* Plaintiffs are collaterally estopped from relitigating these state court findings of fact. *See Citibank, N.A. v. Graphic Scanning Corp.,* 459 F.Supp. 337, 341 (S.D.N.Y. 1978).[5]

Plaintiffs clearly were not entitled to § 1341 treatment upon repayment of the illegal kickbacks. *See Perez, supra,* 553 F.Supp. at 561; *cf. McKinney,* 574 F.2d at 1243. In *Perez,* as in the instant case, the taxpayer sought § 1341 treatment for losses suffered when he made restitution of illegal kickbacks. *See* 553 F.Supp. at 559. The *Perez* court granted summary judgment for the government and denied the taxpayer's claim for § 1341 treatment. *See id.* at 561. Specifically, the court rejected the taxpayer's argument that a trial was required on the issue of whether it appeared at the time of receipt that the taxpayer had an unrestricted right to the income. According to the court, since the taxpayer "unquestionably took what amounted to kickback payments …, no such appearance can have existed." *See Perez,* 553 F.Supp. at 561. The reasoning of the *Perez* court is dispositive on plaintiffs' claim in the instant action for § 1341 treatment upon repayment of the kickbacks.

Plaintiffs fare no better on their claim for § 1341 treatment due to the repayment of Zadoff's salary. This salary was received while Zadoff was "acting in a manner disloyal to his employer." *See Milton Bradley, supra,* at 3. Under New York law, it is well-settled that an employee has no legal right to his salary under such

---

**4.** Treas. Reg. §§ 1.1341–1(a)(1), (2) (1954) provide in relevant part:
 (a) In general. (1) If, during the taxable year, the taxpayer is entitled … to a deduction of more than $3,000 because of the restoration to another of an item which was included in the taxpayer's gross income for a prior taxable year … under a claim of right, the tax imposed … shall be....

(2) For the purpose of this section "income included under a claim of right" means an item included in gross income because it appeared from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item.

**5.** Plaintiffs have never argued that issue preclusion should not apply. *Cf.* Note 8 *infra.*

circumstances. *See, e.g., Lamdin v. Broadway Surface Advertising Corp.*, 272 N.Y. 133, 5 N.E.2d 66, 290 N.Y.S. 133 (1936); *Harry R. Defler Corp. v. Kleeman*, 19 A.D.2d 396, 243 N.Y.S.2d 930, *aff'd*, 19 N.Y.2d 694, 278 N.Y.S.2d 883, 225 N.E.2d 569 (1963); *see generally* 52 N.Y. Jur.2d *Employment Relations* § 101 (1986). Thus, when Zadoff took illegal kickbacks and was disloyal to his employer, he did not have any bona fide or legitimate claim of right to the salary. *Compare Lewis, supra,* 340 U.S. at 591, 71 S.Ct. at 522. In the language of § 1341, at the time of receipt, there was no appearance that Zadoff had an unrestricted right to the salary. *See* § 1341(a)(1); *cf. McKinney, supra,* 574 F.2d at 1243; *Perez, supra,* 553 F.Supp. at 561.

The Court is not persuaded by the plaintiffs' attempt to characterize this case as one in which the taxpayer receives income under a bona fide claim of right but then is subsequently adjudged liable to return the income. *Compare North American Oil, supra,* 286 U.S. at 424, 52 S.Ct. at 615. In support of their argument, plaintiffs allege that Zadoff merely gave "advisory services" to Bradley's suppliers and that the suppliers "were willing to compensate him, without cost or damage to Milton Bradley." *See* PMO, *supra* at 5. Thus plaintiffs allege that it appeared to Zadoff, at the time of receipt, that he had an unrestricted right to the suppliers' payments and the salary.

*See id.* at 6, 8. According to plaintiffs, Zadoff was adjudged liable to return the money to Bradley solely because he followed the "erroneous" legal advise of his prior attorney and failed to testify on his own behalf at the hearing held before the special referee in the prior state court action.[6] *See id.*

First, the Court notes that plaintiffs' allegations are set forth solely in their memorandum of law and not in proper affidavit form.[7] As such, these allegations are plainly insufficient to create a genuine issue of material fact for trial. *See* Fed.R. Civ.P. 56(e).

Moreover, plaintiffs' allegations that Zadoff did not receive kickbacks and that Zadoff was loyal to Bradley flatly contradict the state court's factual findings in *Milton Bradley, supra.* Thus, even if plaintiffs had provided the Court with proper affidavits, these allegations would still be insufficient to create a genuine issue of fact for trial because plaintiffs cannot relitigate the *Milton Bradley* court's factual findings.[8] Having received illegal kickbacks and a salary while acting in a manner disloyal to his employer, as the state court so found, Zadoff cannot now claim that a genuine issue of fact exists as to whether there was a reasonable appearance of an unrestricted right to the income.[9] As the *Perez* court noted, "no such appearance can have existed." *See Perez, supra,* 553 F.Supp. at 561.

**6.** Plaintiffs allege in their memorandum of law, but not in proper affidavit form, that Zadoff has obtained a judgment for legal malpractice against his prior attorney, who advised him not to testify. *See* PMO at 2.

**7.** Plaintiffs do allege in their memorandum of law that Bradley's counsel will support plaintiffs' allegations. *See* PMO at 5. Plaintiffs, however, have not filed any affidavits from Bradley's counsel, nor has the Court received any other verification that Bradley's counsel will support plaintiffs' allegations.

**8.** Although plaintiffs do not specifically raise the argument, the Court notes that plaintiffs cannot avoid the preclusive effect of the prior state court judgment in *Milton Bradley, supra,* merely because Zadoff allegedly followed the erroneous legal advice of his prior attorney. *Cf. Estate of L.C. Hunt v. United States,* 309 F.2d

146, 148 (5th Cir.1962) (*res judicata* applies despite prior counsel's error in attempting to split one cause of action into two).

**9.** Plaintiffs' allegation that Zadoff believed he had an unrestricted right to the income, even if this allegation was set forth in proper affidavit form, does not create a genuine issue of material fact for trial. In light of the state court findings that Zadoff received kickbacks and that he was disloyal to his employer, such a belief would not have been reasonable. *Cf. Perez, supra,* 553 F.Supp. at 561. A mere unreasonable belief by a taxpayer that he has a right to income, without more, will not entitle the taxpayer to § 1341 treatment upon repayment. *Cf. id.* at 559 (claim of right must be bona fide and legitimate).

■ The only issue remaining in this action is whether the I.R.S. correctly denied plaintiffs' 1980 refund claim in its entirety. 26 U.S.C. § 7422(a) (1982) provides that a suit may not be filed in any court for the refund of taxes "until a claim for refund ... has been duly filed with the Secretary, ... according to the ... regulations of the Secretary." It is undisputed that plaintiffs failed to file a claim for a refund separate and apart from the Form 1045, Application for Tentative Refund. *See* Stipulation at ¶ ¶ 12, 13. This application for a tentative refund, however, is not a proper claim for a refund within the meaning of § 7422(a). *See* Temporary Treas.Reg. § 1.6411–1d, T.D. 7672, 1980–1 C.B. 299; *cf. Morse v. United States*, 650 F.2d 287 (Ct.Claims 1980); *Crismon v. United States* 550 F.2d 1205 (9th Cir.1977) *cert. denied*, 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977). Plaintiffs' 1980 refund claim therefore must be denied. *See* 26 U.S.C. § 7422(a).

### CONCLUSION

For the reasons stated *supra*, defendants' motion for summary judgment is granted. The Clerk of the Court is hereby directed to enter judgment for the defendant accordingly.